UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOSHUA M. LEE,

        Plaintiff,

    v.                                                                                                CAUSE NO. 2:20-CV-306 DRL

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

        Defendant.

## OPINION & ORDER

Joshua Manwell Lee appeals from the Social Security Commissioner's final judgment denying disability insurance benefits. Mr. Lee requests reversal of the Commissioner's decision and remand of his claim for a new hearing and decision. Having reviewed the underlying record and the parties' arguments, the court remands the Commissioner's decision.

## BACKGROUND

Mr. Lee suffers from neck, back, rib, arm, and wrist pain that originated when he fell from a rail car at work in November 2014 [ECF 17 at 1-2]. Mr. Lee filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on February 8, 2016, alleging disability beginning in November 2014 [R. 94, 104, 114-15]. Mr. Lee was 30 years old on the alleged onset date [R. 433]. He has some college education and certifications related to his employment at BNSF Railway and Commonwealth Edison [R. 66-68]. Mr. Lee has previous work experience as a USPS mail handler, a Commonwealth Edison meter reader, and a BNSF intermodal operator—all of which required significant movement and lifting throughout the day [R. 68-70].

On August 30, 2019, Administrative Law Judge (ALJ) Ramona Scales denied Mr. Lee's petition on the basis that there were sufficient jobs available in the national economy that he could perform

considering his age, education, work experience, and residual functional capacity (RFC) [R. 32-33]. The Appeals Council denied Mr. Lee's request for review on June 15, 2020 [R. 7]. Mr. Lee then filed this appeal.

## STANDARD

The court has authority to review the Appeal Council's decision under 42 U.S.C. § 405(g). Because the Appeal Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R.

§ 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform work in the economy. *See Young*, 957 F.2d at 389.

The ALJ reviewed the evidence relating to Mr. Lee's condition during the relevant time period encompassed by his disability application under review. *See Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). The ALJ concluded Mr. Lee had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) [R. 25]. Mr. Lee could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand/and or walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday [*id.*]. Mr. Lee could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl [*id.*]. Mr. Lee could frequently handle, finger, and reach in all other directions but occasionally reach overhead with the bilateral upper extremities [*id.*]. He could occasionally push and/or pull with the upper and lower extremities, and he needed to avoid concentrated exposure to extreme cold and hazards, including slippery/uneven surfaces, moving machinery, and unprotected heights [*id.*]. Mr. Lee had to alternate between sitting and standing for up to 10 minutes each hour, and he required work free of fast-paced production or quotas [*id.*].

The ALJ asked the vocational expert whether jobs existed in the national economy that Mr. Lee could perform. The vocational expert concluded that there were 74,000 jobs nationally as an order clerk (17,000), a charge account clerk (24,000), and a call-out operator (33,000) [R. 32]. Based on this testimony, the ALJ concluded that Mr. Lee was not disabled [*id.*].

Mr. Lee challenges this conclusion, advancing three arguments: (1) the ALJ's analysis of Mr. Lee's treating pain specialist's opinions was legally insufficient and was not supported by substantial evidence; (2) the ALJ's RFC assessment was not supported by substantial evidence; and (3) the ALJ's analysis of Mr. Lee's subjective statements was legally insufficient.

3

      A.     *The administrative decision erred in analyzing Mr. Lee's treating pain specialist's opinion.*

Mr. Lee first argues the ALJ erred in analyzing opinions from his treating pain specialist, Dr. Kanuru, and Nurse Megan Colburn who worked with Dr. Kanuru. In November 2017, Nurse Colburn completed a physical RFC questionnaire that offered limitations for Mr. Lee [R. 1439-41]. She reported that Mr. Lee could not work because of the severity of his neck and back pain when performing simple daily tasks [R. 1439]. Dr. Kanuru later concurred in that assessment and cosigned the questionnaire in April 2018 [R. 1455].

In May 2018, during the initial hearing, Mr. Lee testified that he was not working [R. 68]. The last time he performed any work activity for pay was November 22, 2014, the day he was injured [R. 68-69]. The ALJ reflected this same finding in the decision, nothing that Mr. Lee hadn't engaged in substantial gainful activity since November 22, 2014 [R. 24].

In September 2018, Nurse Colburn noted that Mr. Lee was employed full time [R. 1772] but had no work restrictions [R. 1776]. In January 2019, Dr. Kanuru completed a chronic pain RFC questionnaire and largely reiterated his earlier findings, noting that Mr. Lee's pain was frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks, though Mr. Lee could perform low stress jobs [R. 1690-91]. In March 2019, Dr. Kanuru again noted that Mr. Lee was employed full time [R. 1719] but had no work restrictions [R. 1724]. Nurse Colburn recorded this same information again in May 2019 [R. 1942, 1947].

The ALJ gave "little weight" to these treating medical sources for two reasons. First, she said they were inconsistent with the record [R. 31]. Specifically, the ALJ said Dr. Kanuru historically made notations in his medical records that Mr. Lee had "no restrictions" [*id.*]. Mr. Lee effectively contends that the ALJ misinterpreted this notation: the doctor meant that there were no restrictions because Mr. Lee was not working at the time, not that he could proceed to work without restrictions.

4

The court cannot reweigh the evidence. So long as the ALJ has relied on reasonable evidence and built an accurate and logical bridge from that evidence to her decision, the decision must stand. *Thomas*, 745 F.3d at 806. That said, the ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *see also Benson v. Saul*, 2021 U.S. Dist. LEXIS 153652, 13 (N.D. Ind. Aug. 16, 2021) ("Something that isn't clear is a call to develop the record, not a call to discredit a treating physician."). The court cannot say the administrative decision relied on reasonable evidence from a developed record or established that logical bridge here.

The "no restrictions" remark appears under the diagnosis section of these medical records, perhaps lending to some confusion; but in context these notations must be read appreciating that Mr. Lee was clearly not working for which restrictions needed to be annotated. *Cf. Eskew v. Astrue*, 462 F. Appx. 613, 616 (7th Cir. 2011) ("The absence of major work restrictions in…medical records does not illuminate the question of her credibility—she was after all unemployed throughout the time in question."); *see also Israel v. Colvin*, 840 F.3d 432, 438-39 (7th Cir. 2016) (ALJ should not rely on absence of information in doctor's report to establish RFC since regulations do not require a doctor to report all limits.). To the extent that the ALJ believed that these notations established some other finding, the record should have been developed to reveal that. This proves particularly true when Dr. Kanuru first opined—before any such "no restrictions" notation—and then consistently continued to opine that Mr. Lee had limitations that interfered with his ability to work.

Second, the ALJ discounted these medical opinions because Mr. Lee reported to Dr. Kanuru and Nurse Colburn that his pain improved with medication [R. 31]. The administrative decision cited Exhibit 26F, actually referencing treatment notes from Dr. Shapiro following Mr. Lee's second spinal fusion, but not notes from Dr. Kanuru or Ms. Colburn [R. 1432-33]. Nothing in these records indicates that his pain improved with medication [*id.*].

The administrative decision also cited Exhibit 41F—this time records from Dr. Kanuru that speak to improvement with medication. The records show that Mr. Lee wanted to manage the pain with medication. Notably though, these same records also show Mr. Lee reported continued pain and ongoing limitations, including decreased range of motion (with pain), decreased grip strength, sensory changes, tenderness, muscle weakness, positive straight leg raise tests, left hip pain, and low back pain [R. 1721-22, 1727, 1731-32, 1741-42, 1751-52, 1760-62].

The ALJ needed to address these notes of continued abnormalities when she assessed the evidence, even if she found them unpersuasive. The administrative decision did not address the continued pain and abnormalities. *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (ALJ may not selectively choose facts supporting her finding of disability and ignore evidence that points to disability); *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (ALJ erred by selectively ignoring evidence that contradicted her findings). The record lacks any indication why one line of evidence was preferred over the other, or why pain improvement suggested pain elimination or the absence of any work limitations. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved . . . but whether [she] has improved enough to meet the legal criteria of not being classified as disabled."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.").

A treating doctor's opinions are to be awarded controlling weight if well supported by accepted clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527; SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009).[1] When assessing whether to afford a treating physician's opinions less than controlling

---

[1] On January 18, 2017, the Commissioner published new regulations regarding the evaluation of medical evidence in relation to 20 C.F.R. §§ 416.927 and 404.1527. 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new regulations only apply to claims filed on or after March 27, 2017. *Id.* Mr. Lee's claim was filed in February 2016, so the preceding regulatory scheme applies.

6

weight, the ALJ must consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527. The decision articulated less than substantial evidence for affording Dr. Kanuru's opinions "little weight" [R. 31]. The court must remand accordingly.

B.  *The administrative decision erred in its RFC assessment.*

The ALJ found Mr. Lee had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Mr. Lee argues that the RFC assessment was not supported by substantial evidence. He says the ALJ failed to build an accurate and logical bridge between the evidence and her conclusion because she incorrectly weighed opinion evidence with little explanation, mischaracterized evidence, cherry-picked evidence that supported her conclusion, and ignored lines of evidence that were contrary to her conclusion. Parts of what the ALJ assessed from the record were quite capably done; however, the decision erred in its RFC assessment.

An ALJ is required "to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Though "an ALJ need not mention every piece of evidence," *id.,* she is required to "confront the evidence in [the claimant's] favor and explain why it was rejected[.]" *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). An ALJ is required to point to specific evidence to explain how she reaches her conclusions. SSR 96-8p, 1996 SSR LEXIS 5, 19 (July 2, 1996) ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts").

The court turns first to underlying medical opinion beyond the assessment of Dr. Kanuru's opinions that already has proven problematic. Mr. Lee challenges the ALJ's assessment of these other medical opinions. The ALJ awarded varying degrees of weight to several opinions about Mr. Lee's

7

capabilities. Mr. Lee argues that the ALJ's weight assessments lacked explanation, thus lacked support from substantial evidence.

The ALJ gave "little weight" to the opinions of the state agency consultants, who found Mr. Lee could perform light work with occasional postural restrictions [R. 30]. The decision said the opinions were inconsistent with the record, seemingly with no explanation for why and no citation to any evidence that would explain why. The government, in briefing on this appeal, also offers no explanation why. The government merely repeats what the ALJ said—that the opinions were inconsistent with the record—without showing how or why the ALJ reasonably thought so. The court cannot guess at the logical bridge that might exist. Some explanation of why evidence is rejected or partially accepted is required. *Thomas*, 826 F.3d at 961.

It would seem nonetheless that this error is harmless because the limitations offered by the state agency consultants were the same or less restrictive than those provided by the ALJ.[2] Therefore, even had the ALJ given more weight to the opinions of the state agency consultants, this would not have affected the outcome of the disability determination. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (error is harmless when it "would not affect the outcome of th[e] case").

The administrative decision gave "little weight" to a functional capacity evaluation (FCE) from February 2017 that showed Mr. Lee could perform light work but required frequent breaks [R. 30-31; 1442-52]. The ALJ found that the FCE opinion was inconsistent with the record. The ALJ observed that the FCE opinion occurred before Mr. Lee's second fusion and that Mr. Lee reported improvement in his symptoms after this procedure [R. 31]. In truth, Mr. Lee reported that the surgery

---

[2] The state agency consultants found that Mr. Lee could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occassionally balance, stoop, kneel, crouch, and crawl [R. 99-100; 123-24]. These limitations were less restrictive than the ALJ's, who found that Mr. Lee could only lift and/or carry 10 pounds occassionally and could only stand and/or walk for about 2 hours in an 8-hour workday [R. 25].

was "somewhat helpful" and that he still had neck pain and intermittent arm pain [R. 1433]. Once more, some improvement does not equate on its face to an elimination of pain or ongoing limitations, *see Murphy*, 759 F.3d at 819; *Scott*, 647 F.3d at 740, and nothing explains why then the FCE deserved little weight or proved inconsistent based on some post-surgical improvement but ongoing pain. This error warrants remand because the FCE concluded that Mr. Lee could only sustain a 5-hour workday with frequent breaks [R. 1447]. The administrative decision didn't limit Mr. Lee to a 5-hour workday with frequent breaks in its RFC [R. 25], and this limitation offered by the FCE may have affected the ALJ's disability determination. *See* SSR 96-8p, 1996 SSR LEXIS 5 at 19 (ALJ must discuss the claimant's ability to perform work "on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)").

The administrative decision gave "great weight" to Dr. Munoz's opinion [R. 30]. Dr. Munoz never examined or treated Mr. Lee, but he listened to Mr. Lee's testimony from the hearing and reviewed the case records [R. 53]. Based on his review, Dr. Munoz opined that Mr. Lee could perform sedentary work with postural and manipulative limitations along with a sit/stand option [R. 54-55]. Dr. Munoz further testified that Mr. Lee didn't have any limits in handling and fingering or feeling [R. 55]. Generally, the more consistent a medical opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. § 404.1527(c)(4). Dr. Munoz said he did not find evidence of radiculopathy[3] in Mr. Lee's upper extremities [R. 55-56]; however, Mr. Lee was consistently diagnosed with cervical radiculopathy (and lumbar radiculopathy) [R. 694; 731; 788-89; 810; 817; 866; 1259; 1269; 1322; 1331; 1340; 1367].

Had the administrative decision explained why any of these diagnoses were unpersuasive to the ALJ, perhaps the weight given to Dr. Munoz's opinions could have been permitted. Instead, the

---

[3] "Radiculopathy refers to symptoms that develop when there is a compression of a spinal nerve root." Mayo Clinic, *Radiculopathy*, https://sportsmedicine.mayoclinic.org/condition/radiculopathy/ (last visited Dec. 1, 2021).

decision was impermissibly silent as to this inconsistency with the rest of the record. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (ALJ may not ignore an entire line of evidence); *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (ALJ's silence on an issue makes it unclear if rejected, forgotten about, or found irrelevant). This silence constitutes error because Mr. Lee's cervical radiculopathy may have affected his handling and fingering limits,[4] which could in turn have had an impact on Mr. Lee's ability to work. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) ("[H]andling . . . [is] required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do."). The vocational expert testified that, if Mr. Lee were limited to occasional fingering on the right or occasional fingering on both sides, then that would preclude the light jobs and only the call-out operator job would remain with no diminution in numbers [R. 89]. Ultimately, though, the ALJ said Mr. Lee can "frequently handle, finger, and reach in all directions" rather than limiting him to only occasional fingering [R. 30].

Relatedly, the administrative decision gave "some weight" to the impartial medical expert, Dr. Goldstein, who found Mr. Lee could only lift up to 20 pounds occasionally; occasionally reach overhead with the right upper extremity; and frequently use his hands [*id.*; R. 1604-08]. The ALJ gave "some weight to the opinion of Dr. Goldstein but [found] additional limitations" [R. 30]. Because the ALJ crafted an RFC that was more limiting than Dr. Goldstein's evaluation, the outcome of the disability determination would not have been any different had the ALJ given more weight to Dr. Goldstein. *See Skarbek*, 390 F.3d at 504.

The administrative decision afforded "little weight" to Mr. Lee's provider, Dr. Ham, who opined that Mr. Lee could only lift 5 pounds with his right upper extremity but noted this as a

---

[4] "Radiculopathy is characterized by: [p]ain[,] . . . numbness or tingling. These sensory changes may be present in the arm/hand or leg/foot." Mayo Clinic, *Radiculopathy*, https://sportsmedicine.mayoclinic.org/condition/radiculopathy/ (last visited Dec. 1, 2021). "For a cervical radiculopathy, you may have weakness in your arm/hand and notice that you drop things or have difficulty lifting things." *Id.*

10

temporary disability [R. 30]. Subsequently, the decision explained these opinions were afforded little weight because they "appear[ed] to be only temporary" [*id.*]. Dr. Ham's notes indicate Mr. Lee was placed "on work restriction of temporary disability" [R. 513]. Mr. Lee's temporary treatment relationship combined with the temporary disability status provide a valid explanation for affording little weight to this opinion. *See* 20 C.F.R. 404.1527(c)(2). Thus, the ALJ's analysis of Dr. Ham's opinions was supported by substantial evidence.

What is problematic, though, is that the ALJ assessed an RFC that was more restrictive than Dr. Goldstein (along with the state agency medical consultants[5] and Dr. Munoz[6] in certain respects) but less restrictive than other providers, namely Dr. Kanuru and the functional capacity evaluator, without building the logical bridge as to why. The administrative decision didn't adequately explain how the evidence led to its conclusions in the RFC, *see Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (RFC assessment must have a reasonable basis in law and fact); *Bailey v. Barnhart*, 473 F. Supp.2d 842, 848 (N.D. Ill. 2006) ("ALJ's decision to construct a 'middle ground' RFC assessment without any evidentiary support violated the ALJ's well-settled obligations under Seventh Circuit precedent"), which ties back to the fact that the decision gave "little weight" to Dr. Kanuru and the functional capacity evaluator without providing substantial evidence for its reasoning.

The court turns next to the ALJ's consideration of Mr. Lee's impairments in their totality. Mr. Lee says the ALJ erred by not considering his obesity when setting his RFC. The ALJ must consider all medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 SSR LEXIS 5 at 14-15 (ALJ must consider limitations and restrictions imposed by

---

[5] *See* n.2, *supra*.

[6] For example, Dr. Munoz opined that Mr. Lee could frequently reach in all directions, including overhead, with both upper extremities, and had no limits handling and fingering [R. 54-55]. These limitations were less restrictive than the ALJ's, who found that Mr. Lee could only occasionally reach overhead and could only frequently handle and finger [R. 25].

all of the claimant's impairments, including non-severe impairments); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (ALJ must consider the "entire constellation of ailments," including those that are not severe). The ALJ found Mr. Lee's obesity to be non-severe [R. 24]. The administrative decision noted that, though Mr. Lee was 6'1" and 232 pounds, his obesity was "only a slight abnormality that has no more than a minimal effect on the individual's ability to do basic work activities" [*id.*]. The decision further said there was "no mention of the claimant having any complications related to his weight" [*id.*]. Mr. Lee says the ALJ should have considered how his lumbar generative changes combined with his obesity may have affected his ability to sit, *see Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (disc disease is exacerbated by obesity); but, as the ALJ pointed out, there was nothing in the record that mentioned Mr. Lee suffered this particular complication or any other complication related to his weight [R. 24]. On this issue then, the ALJ committed no error.

Mr. Lee concludes his RFC challenge by arguing that the ALJ didn't properly consider his need to elevate his legs. The administrative decision didn't include a limitation for leg elevation in the RFC [R. 25]. The decision said there was no record of any recommendation for the elevation until "very recently and with no mention as to why he has to do it" [R. 30]; however, the leg elevation recommendation first appeared in a note from Ms. Colburn on November 16, 2017, which was almost two years before the administrative decision [R. 1440]. Further, Dr. Kanuru also recommended leg elevation in 2017 and 2019 [R. 1454; 1691]. Still more, the decision was incorrect when stating there was no mention as to why Mr. Lee had to elevate his feet. Dr. Kanuru and Ms. Colburn indicated the elevation was recommended due to Mr. Lee's symptoms from restless leg syndrome, bilateral lumbar radiculitis, and cramps/muscle spasms [R. 1440; 1454].

Additionally, the administrative decision seemed to make inconsistent statements about Mr. Lee's feet elevation. Specifically, the ALJ pointed out that Mr. Lee said he must lie down and elevate his feet [R. 29], but subsequently commented that Mr. Lee "did not mention at any time that he has

12

to elevate his legs" [R. 30]. These constitute inconsistent findings, requiring remand. *See Peterson v. Charter*, 96 F.3d 1015, 1016 (7th Cir. 1996) (remand required when ALJ makes inconsistent findings). Even if the ALJ found the hearing testimony and medical recommendations unpersuasive, the administrative decision needed to provide an explanation for its conclusion, rather than assert what equate to inconsistencies on this record. Alternatively, if the ALJ thought more explanation was required, she should have reached out to clarify the opinion from Dr. Kanuru and Ms. Colburn, rather than simply disregard it. 20 C.F.R. § 404.1527; SSR 96-2p, 1996 SSR LEXIS 9 at 10 (may be necessary to clarify opinions or findings which might support a treating source's opinion). Because the need for Mr. Lee to take breaks for elevating his feet could impact the types of jobs he could perform,[7] this part of the decision constitutes error. What's more, the Commissioner didn't address this argument in its response brief, thereby waiving its opportunity to do so. *See Cincinnati Ins. Co. v. E. Atlantic Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failure to respond operates as a waiver); *Dogan v. Astrue*, 751 F. Supp.2d 1029, 1042 (N.D. Ind. 2010) (Commissioner's failure to address errors results in waiver).

In light of these errors in the administrative decision, there is not substantial evidence to support the RFC assessment. The court must remand accordingly.

  C. *The administrative decision's analysis of Mr. Lee's subjective statements was legally insufficient.*

Mr. Lee's final argument is that the ALJ's analysis of Mr. Lee's subjective statements was legally insufficient [ECF 17 at 21]. When evaluating Mr. Lee's statements, the ALJ was required to consider whether Mr. Lee had a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2016 SSR LEXIS 4, 5 (Mar. 16, 2016). If there such an impairment exists, the ALJ evaluates the intensity and persistence

---

[7] The first vocational expert, Mona Robinson, testified that if an individual is off task 10 minutes for every hour, that would be work preclusive [R. 58]. The second vocational expert, Thomas Gressick, testified that if an individual were off task due to the side effects of medication, the need to lie down, and/or pain and this equaled 15% of the workday, that would be work preclusive [R. 89].

of the symptoms to determine the extent to which they limit the individual's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 SSR LEXIS 4 at 9. The ALJ found Mr. Lee had medically determinable impairments that could reasonably be expected to cause the alleged symptoms; however, the ALJ found Mr. Lee's statements concerning the intensity, persistence, and limiting effects of these symptoms were not "entirely consistent" with the record [R. 29].

The administrative decision noted that Mr. Lee testified that he had trouble gripping objects with his right hand [R. 30]. The decision pointed out that at a consultative examination, Mr. Lee was reported to have almost normal grip strength of 4+/5 on the right side with normal grip strength and fine finger manipulation on the left side [R. 30]. Though true, Mr. Lee was also reported to have had as low as 2/5 gripping strength on the right side in other reviews [R. 1711, 1721, 1731, 1741, 1944]. The ALJ should not have picked one examination that supported her finding without addressing the examinations that could point toward a finding of disability. *See Reinaas*, 953 F.3d at 466; *Scrogham*, 765 F.3d at 698-99. Once more, the Commissioner didn't address this argument in response on this appeal, resulting in waiver. *See Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F. Supp.2d at 1042.

Further, following the ALJ's evaluation of Mr. Lee's statement that he has trouble gripping objects with his right hand, the ALJ relied on the notion that only conservative treatment was recommended for him with no recommendation for surgery on Mr. Lee's upper extremities [R. 30]. It seems the ALJ may have also been relying on this notion in discounting Mr. Lee's statements about his pain [R. 29]. The ALJ didn't explain why this disproves any of Mr. Lee's subjective testimony. Additionally, in making this statement, the ALJ didn't acknowledge Mr. Lee's two previous spinal fusions, even though these were done, in part, to attempt to treat "severe pain" caused by the "C5-C6 herniation, radiculopathy," which affects the upper extremities [R. 990, 1066-67]. Still more, there was no indication that additional surgery was offered as an option by any of Mr. Lee's treating physicians, and it is not the ALJ's job to speculate whether surgery was an option. *See Voigt v. Colvin*, 781 F.3d

14

871, 877 (7th Cir. 2015) (discounting ALJ's reliance on claimant's failure to have particular treatment because there was no reason to think that would have been appropriate); *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("a decision based on speculation is not supported by substantial evidence"). The Commissioner didn't address this argument, once again resulting in waiver. *See Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F. Supp.2d at 1042.

Mr. Lee testified that he couldn't perform a sedentary job because of increased rib and neck pain [R. 29]. The ALJ noted that the record showed that Mr. Lee had an improvement in his pain with the medication [R. 30], but didn't indicate the level of improvement in pain. The administrative decision didn't acknowledge that Mr. Lee's use of multiple medications may have supported his assertions of pain. *See Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016) (use of prescription medication is objective evidence which can support assertions of pain). The decision didn't consider other practices Mr. Lee used in an attempt to relieve his pain, including visits with multiple different doctors and various testing, as going through these tests indicates persistence with regard to his pain. *See* SSR 16-3p, 2016 SSR LEXIS 4 at 22-23 (persistent attempts at relief may indicate symptoms are distressful, intense, and persistent); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (unlikely the claimant would undergo the type and amount of treatment she did to strengthen credibility of her reported pain). If the ALJ found these actions unpersuasive, the administrative decision needed to provide a logical bridge as to why. Once more, the Commissioner didn't address this argument, resulting in waiver. *See Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F. Supp.2d at 1042.

Next, the ALJ noted that Mr. Lee said his medication causes headaches and fatigue [R. 30]. The ALJ discounted Mr. Lee's reported side effects from his medication because she found no mention of side effects in the record [*id.*]. However, Ms. Colburn and Dr. Kanuru noted Mr. Lee's medications caused him drowsiness [R. 1439, 1691]. It remains entirely conceivable that Mr. Lee failed to complain consistently of side effects because the drowsiness was worth enduring compared to the

15

alternative pain. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[W]e are skeptical that a claimant's failure to identify side effects undermines her credibility . . . some patients may not complain because the benefits of a particular drug outweigh its side effects."). Relatedly, perhaps the drowsiness was manageable considering Mr. Lee wasn't working at the time, but it might otherwise hinder his ability to complete a full workday. The Commissioner didn't address these arguments in its response, resulting in waiver. *See Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F. Supp.2d at 1042. Remand is inevitable.

## CONCLUSION

Accordingly, the court GRANTS Mr. Lee's request for remand [ECF 17] and REMANDS the Commissioner's decision for consideration in light of this ruling.

SO ORDERED.

February 4, 2022                                       *s/ Damon R. Leichty*
                                                        Judge, United States District Court